IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02203-WYD-KLM

MIKEAL GLENN STINE,

　　　Plaintiff,

v.

YVETTE FETTERHOFF, Medical Records Administrative Specialist ADX;
STEVEN NAFZIGER, M.D., Clinical Director ADX;
JOHN LORINCZ, D.M.D., Dentist ADX; and
RON WILEY, Warden ADX.

　　　Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 30; Filed February 29, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Plaintiff's Response [Docket No. 98; Filed June 27, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

### I. Factual Background

　　　Plaintiff, a prisoner proceeding *pro se*, brings his claims against Defendants Fetterhoff, Nafziger, Lorincz, and Wiley, each in their individual and official capacities, pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403

1

U.S. 388, 395-97 (1971). Plaintiff contends that Defendants violated his constitutional right to be free from cruel and unusual punishment when they allegedly acted with deliberate indifference toward his serious medical needs by delaying and denying him adequate medical treatment for his "exposed jawbone." *Verified Complaint Against Defendants <u>in Their Official and Individual Capacities / Demand for Jury Trial on All Issues</u>* [Docket No. 3 at 4; Filed October 19, 2007] ("Complaint").

Plaintiff alleges the following facts. Plaintiff, who is incarcerated at the United States Penitentiary Administrative Maximum ("ADX") in Florence, Colorado, noticed that his jawbone was exposed inside his mouth on approximately August 25, 2007. *Id.* at 5. Due to facial swelling and severe pain from alleged jawbone splinters cutting into his tongue, Plaintiff submitted several written requests for a dental examination, and he showed his exposed jawbone to several prison officials. *Id.* On August 29, 2007, Defendant Lorincz, who is a dentist at ADX, examined Plaintiff and treated him by filing down the jawbone splinters so that they would not cut into Plaintiff's tongue. *Id.* Before treating Plaintiff, Defendant Lorincz explained that he would "short-cut" the procedure by leaving the jawbone partially exposed instead of recovering it with Plaintiff's gum. *Id.* at 6. During the procedure, Defendant Fetterhoff, the Medical Records Administrative Specialist at ADX, assisted due to short staffing and operated the suction and rinse tools. *Id.* However, according to Plaintiff, Defendant Fetterhoff did not know how to properly operate the suction and rinse tools, and she inadvertently gagged Plaintiff with excess water, as well as allowed the suction tool to grab Plaintiff's tongue and other parts of his mouth, causing severe pain. *Id.* Plaintiff alleges that she apologized profusely to him during the procedure. *Id.*

On September 3, 2007, Plaintiff's exposed jawbone became infected, allegedly causing him "undiscribable [sic]" pain that impaired his ability to eat. *Id.* On several occasions, Plaintiff submitted written requests to see a dentist, and he sought assistance from several prison officials regarding his exposed jawbone. *Id.* at 6-8. However, the prison officials allegedly informed Plaintiff that Defendants Wiley and Nafziger "are preventing [his] medical care" due to Plaintiff filing numerous lawsuits against them. *Id.* at 6. In addition, Plaintiff contends that Defendant Wiley "directed [that Plaintiff] not be issued [a] grievance [form], until pending grievances are resolved." *Id.* at 7-8.

On September 26, 2007, Defendant Lorincz examined and treated Plaintiff's infected exposed jawbone by prescribing an antibiotic and "a numming [sic] agent." *Id.* at 8-9. In addition, Defendant Lorincz referred Plaintiff to an oral surgeon. *Id.* On September 28, 2007, Plaintiff's exposed jawbone allegedly broke off. *Id.* at 9. Plaintiff contends that he placed his jawbone inside an envelope and sent it to the medical staff. *Id.* As of the filing of his complaint, on October 2, 2007, Plaintiff still awaited an examination from an oral surgeon. *Id.* at 9.

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *Motion* [#30]. Although Plaintiff untimely filed his Response, the Court considers it to the extent that Plaintiff asserts relevant counterarguments that substantively respond to Defendants' Motion.[1] *Response* [#98]. Defendants did not file a reply.

---

[1] Pursuant to the Court's Order of April 30, 2008, Plaintiff was given an extension of time to respond to Defendants' Motion [Docket No. 71]. Although his response was due on June 23, 2008, the Court did not receive it until June 27, 2008. Given Plaintiff's incarcerated status, the Court accepts the Response as filed.

## II.  Standard of Review

Because federal courts are courts of limited jurisdiction, the Court must have a statutory basis for exercising jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6), on the other hand, is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing

4

*Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

Defendants argue that, pursuant to Rule 12(b)(1), the Court must dismiss Plaintiff's official capacity claims against Defendants and the individual capacity claim against Defendant Lorincz for lack of subject-matter jurisdiction. *Motion* [#30] at 4-6. In addition, Defendants argue that, pursuant to Rule 12(b)(6), the Court must dismiss Plaintiff's claims against Defendants Fetterhoff, Nafziger, and Wiley in their individual capacities for failure

5

to state a claim upon which relief may be granted. *Id.* at 6-11. Finally, Defendants assert the affirmative defenses of failure to exhaust administrative remedies and qualified immunity. *Id.* at 11-14.

**A.      Lack of Subject-Matter Jurisdiction**

**1.      Official Capacity Claims**

Plaintiff brings a *Bivens* action against Defendants in their official capacities. *Bivens* suits are the federal analogue to suits brought against state officials pursuant to 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006). In that regard, they provide a cause of action against federal officials in their individual capacities for damages for constitutional violations in certain circumstances, even in the presence of an alternative statutory cause of action. *Carlson v. Green*, 446 U.S. 14, 23 (1980) (holding that alternative statutory causes of action do not preclude *Bivens* claims); *cf. Wilkie v. Robbins*, __ U.S. __, 127 S. Ct. 2588, 2597-98 (2007) (noting that *Bivens* actions are not available for all constitutional violations).

Although *Bivens* creates "an implied private action for damages" against federal officers, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1247 (10th Cir. 1989) (holding that the doctrine of sovereign immunity bars *Bivens* claims against federal officials in their official capacities). "Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Farmer*, 275 F.3d at 963 (citation omitted). However, because the doctrine of sovereign immunity

6

bars *Bivens* actions directly against the United States, the Court lacks subject-matter jurisdiction to hear official-capacity *Bivens* claims. *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (noting that when "the United States retains its sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the suit"); *Farmer*, 275 F.3d at 963 (noting that an "'official capacity *Bivens* suit' would be an oxymoron"); *Gibbs*, 886 F.2d at 1247. As such, Plaintiff's *Bivens* claims for money damages against Defendants in their official capacities are barred by sovereign immunity, and the Court thus lacks subject-matter jurisdiction to hear them. *See Gibbs*, 886 F.2d at 1247.

Unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claims against Defendants for injunctive relief from alleged constitutional violations. *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations). To the extent that the Court has jurisdiction over Defendants and that Plaintiff has stated a claim against them, Plaintiff's claims for injunctive relief are not barred.

Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** to the extent that it seeks dismissal without prejudice of claims for money damages against Defendants in their official capacities; but **DENIED** to the extent that it seeks dismissal without prejudice of claims for injunctive relief against Defendants in their official capacities. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

## 2. Defendant Lorincz in his Individual Capacity

Defendants argue that Defendant Lorincz is a Public Health Service employee and is, therefore, not subject to individual liability pursuant to *Bivens*. *Motion* [#30] at 5. As this is a factual challenge to the complaint regarding subject-matter jurisdiction, the Court "may not presume the truthfulness of the complaint's factual allegations." *Holt*, 46 F.3d at 1003. Instead, the Court has "wide discretion to allow affidavits, or other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

Defendants provide an affidavit of Deborah Locke, Senior Attorney Advisor at the Federal Correctional Complex in Florence, Colorado. *Declaration of Deborah A. Locke* [#30-2]. Under penalty of perjury, Ms. Locke verifies that Defendant Lorincz is a Captain with the Public Health Service who is employed as a Dentist at ADX. *Id.* at 7. Plaintiff does not dispute Defendant Lorincz's status as a Public Health Service employee. Pursuant to 42 U.S.C. § 233(a), a Federal Tort Claims Act ("FTCA") claim against the United States is the exclusive remedy for injuries resulting from a commissioned Public Health Service employee who is acting within the scope of his or her employment.

Because Plaintiff's claim against Defendant Lorincz pertains to his treatment of Plaintiff's exposed jawbone, Defendant Lorincz was acting within the scope of his employment as a Public Health Service employee when he allegedly injured Plaintiff. *See Complaint* [#3] at 6. As such, the Court finds that Defendant Lorincz is immune from individual liability. 42 U.S.C. § 233(a); *Muhammad v. Sosa*, No. 06-cv-00763-WYD-BYD, 2008 WL 762253, at ** 2, 7 (D. Colo. Mar. 19, 2008) (unpublished decision).

Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** to the

extent that it seeks dismissal without prejudice of all claims against Defendant Lorincz pursuant to Rule 12(b)(1).  *See Brereton*, 434 F.3d at 1216.

### B. Failure to State a Claim

#### 1. Failure to Exhaust Administrative Remedies

As a preliminary matter, Defendants argue that Plaintiff failed to exhaust administrative remedies with the Bureau of Prisons by fully utilizing its internal three-level grievance process.  *Motion* [#30] at 11.  Although failure to exhaust administrative remedies is an affirmative defense pursuant to the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, __, 127 S. Ct. 910, 921 (2007).  In application of *Jones*, the Tenth Circuit has noted that it must be clear from the face of the complaint that an inmate failed to exhaust available administrative remedies before the district court may dismiss the claim for failure to exhaust.  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  Here, to the contrary, Plaintiff affirmatively alleges that he fully exhausted administrative remedies.  *Complaint* [#3] at 8, 10.  Plaintiff also alleges that Defendants thwarted his attempts to exhaust his administrative remedies by refusing to issue him grievance forms.  *Id.* at 7-8.  Although these assertions are inconsistent, "[t]he facts ordinarily pled in allegations concerning prison conditions frequently will not give a definitive answer as to whether a prisoner has completed his internal grievance process or whether he was thwarted in his attempts to do so."  *Terrell*, 478 F.3d at 1225.  Because I must accept Plaintiff's allegations as true at this stage of the proceeding, and am not permitted to consider evidence submitted outside the complaint, I respectfully **RECOMMEND** that the Motion be **DENIED** to the extent that it

seeks dismissal of all claims due to failure to exhaust administrative remedies.

## 2. Qualified Immunity

Defendants argue that, to the extent that Plaintiff seeks civil damages, they are entitled to qualified immunity. *Motion* [#30] at 13. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendants violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

The Court first addresses whether Plaintiff sufficiently alleges that Defendants Fetterhoff, Nafziger, and Wiley, in their individual capacities, violated a constitutional right. To survive Defendants' Motion pursuant to Rule 12(b)(6), Plaintiff need only "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support [his] allegations." *Shero*, 510 F.3d at 1200 (citation omitted). As Plaintiff alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment, the Court must examine whether Plaintiff pled sufficient facts to state claims against Defendants Fetterhoff, Nafziger, and Wiley. *Complaint* [#3] at 4.

Prison officials violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical

needs by knowing of and disregarding an excessive risk to inmate health or safety. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation omitted). To demonstrate a violation, Plaintiff must satisfy both objective and subjective elements. *Sealock*, 218 F.3d at 1209. The objective element is satisfied if the alleged deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). The subjective element is satisfied if prison officials are both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the objective element of the deliberate indifference test, the Court examines whether Plaintiff sufficiently alleges that his infected exposed jawbone constitutes a sufficiently serious medical need. In his complaint, Plaintiff alleges that, nearly one month after first suspecting an infection, Defendant Lorincz diagnosed his exposed jawbone as infected, prescribed medication to treat it, and referred Plaintiff to an oral surgeon for subsequent treatment. *Complaint* [#3] at 5, 8-9. Because Defendant Lorincz diagnosed Plaintiff's infected exposed jawbone as mandating treatment, Plaintiff has sufficiently pled that his medical need was "sufficiently serious." *Hunt*, 199 F.3d at 1224. Moreover, a delay in medical care may constitute an Eighth Amendment violation when Plaintiff can

11

show that the delay resulted in substantial harm, such as considerable pain. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted). Here, Plaintiff alleges that the delay in medical care for his infected exposed jawbone caused him "undiscribable [sic]" pain that impaired his ability to eat. *Complaint* [#3] at 6. Therefore, the Court finds that Plaintiff's allegations, taken as true, satisfy the objective element of the deliberate indifference analysis.

Turning to the subjective element of this analysis, the Court next examines whether Plaintiff sufficiently pled facts that demonstrate Defendants Fetterhoff, Nafziger, and Wiley each knew of and disregarded Plaintiff's alleged serious medical need. *See Farmer*, 511 U.S. at 837.

### a. Defendant Fetterhoff

Plaintiff alleges that on August 29, 2007, Defendant Fetterhoff assisted Defendant Lorincz during the procedure to grind down Plaintiff's exposed jawbone. *Complaint* [#3] at 5-6. While operating the rinse and suction tools, Defendant Fetterhoff allegedly gagged Plaintiff with excess water, as well as allowed the suction tool to grab Plaintiff's tongue and other parts of his mouth, causing him severe pain. *Id.* at 3.

Taking Plaintiff's allegations as true, the Court finds that Plaintiff fails to sufficiently allege that Defendant Fetterhoff exhibited deliberate indifference by knowing of and disregarding a substantial risk to his health or safety. *See Farmer*, 511 U.S. at 837. To the contrary, Plaintiff's allegations suggest that Defendant Fetterhoff exhibited sympathy and compassion toward his condition, as she repeatedly stated, "I'm sorry etc. etc. [sic] Thats [sic] she [sic] medical records and was just helpping [sic] because they are short on staff." *Complaint* [#3] at 6. Indeed, Plaintiff's complaint implies that Defendant Fetterhoff did not

12

intend to hurt him. At best, Plaintiff alleges facts to state a claim that Defendant Fetterhoff negligently operated the suction and rinse tools. However, "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999); *see also Estelle*, 429 U.S. at 105-06 (holding that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain'" (citation omitted)). Further, because Defendant Fetterhoff assisted with the dental procedure at the explicit instruction of Defendant Lorincz, she reasonably deferred to Defendant Lorincz's superior medical judgment and, thus, could not have known of and disregarded a substantial risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837; *Grady v. Edmonds*, No. 06-cv-01612-DME-PAC, 2007 WL 2986167, at *8 (D. Colo. June 11, 2007). Therefore, Plaintiff has failed to plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support Plaintiff's claim that Defendant Fetterhoff knew of and disregarded an excessive risk to his alleged serious medical need. *See Shero*, 510 F.3d at 1200. As the Court finds that Plaintiff failed to state a claim against Defendant Fetterhoff, the Court need not address whether Defendant Fetterhoff is entitled to qualified immunity.

Accordingly, I respectfully **RECOMMEND** that the Motion be **GRANTED** to the extent that it seeks dismissal with prejudice of all claims against Defendant Fetterhoff pursuant to Rule 12(b)(6).

### b.     Defendants Nafziger and Wiley

Plaintiff alleges that Defendants Nafziger and Wiley actively prevented Plaintiff's

access to medical care for his infected exposed jawbone in retaliation for Plaintiff suing them in several other lawsuits. *Complaint* [#3] at 6. Plaintiff even alleges that Mr. Schiefelbein, the Assistant Health Services Administrator, advised Plaintiff that "you need to not file anything or you'll never get any medical help." *Id.* at 7. While Plaintiff awaited treatment for his infected exposed jawbone, he allegedly submitted several written requests to see a dentist and sought help from several prison officials, each of whom explained that Defendants Nafziger and Wiley controlled Plaintiff's access to medical care. *Id.* at 6-7. Moreover, Plaintiff alleges that Defendant Wiley directed prison officials to not issue Plaintiff any grievance forms until all pending grievances were resolved. *Id.* at 7-8.

Taking Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently alleges that Defendants Nafziger and Wiley exhibited deliberate indifference by knowing of and disregarding a substantial risk to his health or safety. *Farmer*, 511 U.S. at 837. Liberally construing Plaintiff's complaint, the Court finds that Plaintiff has sufficiently pled that Defendants Nafziger and Wiley knew that Plaintiff reported considerable pain due to the infection of his exposed jawbone and that they disregarded Plaintiff's pain by preventing his access to medical care. *See id.* Therefore, Plaintiff's complaint, taken as true, provides "plausible grounds" that discovery will reveal evidence to support Plaintiff's claims that Defendants Nafziger and Wiley exhibited deliberate indifference toward his alleged serious medical need. *See Shero*, 510 F.3d at 1200. Because Plaintiff's factual allegations demonstrate that Defendants Nafziger and Wiley violated a constitutional right, the first prong of the qualified immunity analysis is satisfied in Plaintiff's favor. *See Saucier*, 533 U.S. at 201.

Turning to the second prong of the qualified immunity analysis, the Court finds that

the principles of deliberate indifference regarding the delay and denial of medical care were "clearly established" at the time of the alleged violation. *Id.*; *Estelle*, 429 U.S. at 103-05; *see also Mata*, 427 F.3d at 751 (noting that a delay in medical care that results in substantial harm or considerable pain constitutes an Eighth Amendment violation). Therefore, for purposes of Defendants' Motion, the Court finds that Plaintiff's factual allegations, taken as true, satisfy both prongs of the qualified immunity analysis in Plaintiff's favor and thereby preclude qualified immunity for Defendants Nafziger and Wiley at this stage of the proceeding.

The Court further notes that its "function on a Rule 12(b)(6) motion is not to weigh potential evidence that [Plaintiff] might present at trial, but to assess whether [Plaintiff's] complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton*, 173 F.3d at 1236. Indeed, there remains the real possibility that Plaintiff may be unable to provide any evidentiary support for the allegations contained in his complaint against Defendants Nafziger and Wiley. However, it would be inappropriate for the Court to consider Plaintiff's likelihood of success on the potential evidence at this time.

Accordingly, I respectfully **RECOMMEND** that the Motion be **DENIED** to the extent that it seeks dismissal of the claims against Defendants Nafziger and Wiley in their individual capacities on the basis of qualified immunity.

### IV. Conclusion

For the aforementioned reasons, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss [Docket No. 30; Filed February 29, 2008] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1)  **GRANTED** to the extent that it seeks dismissal without prejudice of claims for money damages against Defendants in their official capacities;

(2)  **DENIED** to the extent that it seeks dismissal without prejudice of claims for injunctive relief against Defendants in their official capacities;

(3)  **GRANTED** to the extent that it seeks dismissal without prejudice of all claims against Defendant Lorincz;

(4)  **DENIED** to the extent that it seeks dismissal of all claims due to failure to exhaust administrative remedies;

(5)  **GRANTED** to the extent that it seeks dismissal with prejudice of all claims against Defendant Fetterhoff; and

(6)  **DENIED** to the extent that it seeks dismissal of the claims against Defendants Nafziger and Wiley in their individual capacities.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of the Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 15, 2008

BY THE COURT:

 s/ Kristen L. Mix          
U.S. Magistrate Judge
Kristen L. Mix