IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02203-WYD-KLM

MIKEAL GLENN STINE,

      Plaintiff,

v.

MR. STEVEN NAFZIGER, Clinical Director;
RON WILEY, Warden, ADX,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
GRANT DEFENDANTS' MOTION TO DISMISS AND
DENY PLAINTIFF'S MOTION FOR INJUNCTION**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on **Defendants' Amended Motion to for [sic]
Dismissal Pursuant to Rule 41 and 28 U.S.C. § 1915** [Docket No. 167; Filed February
17, 2009] ("Motion to Dismiss") and **Plaintiff's Motion for Injunction/with Evidentiary
Hearing/and Request for Expedited Consideration** [Docket No. 207; March 13, 2009]
("Motion for Injunction").  As will be discussed at length below, Plaintiff failed to respond to
Defendants' Motion to Dismiss despite multiple opportunities to do so.  Defendants filed a
Response to Plaintiff's Motion for Injunction on March 19, 2009 [Docket No. 212], but
Plaintiff did not file a reply.

      Because the Court became concerned during the briefing of these Motions that the
Court was not receiving mail from Plaintiff, the Court conducted an evidentiary hearing on
May 22, 2009.  For the efficiency of the Court, and given that a nearly identical motion to
dismiss and a verbatim motion for injunction were pending in Plaintiff's tandem case, 07-cv-

01839-WYD-KLM, the Court set a hearing in Plaintiff's older case [Docket Nos. 326 & 332]. I may take judicial notice of the evidence and testimony presented at the public hearing which is equally relevant to my adjudication of the present Motions in this case. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that the Court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that "federal courts, in appropriate circumstances, may take notice of proceedings . . . if those proceedings have a direct relation to matters at issue" and noting that "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it"); *Gulf Coast W. Oil Co. v. Trapp*, 165 F.2d 343, 349 (10th Cir. 1948) (permitting the court on a motion to dismiss to use uncontroverted facts ascertainable in another matter which are relevant to an issue in the pending case to "reach a just result and bring an end to litigation"); *Powell v. Rios*, 241 Fed. Appx. 500, 501 n.1 (10th Cir. 2007) (unpublished decision) (noting that the Court may take judicial notice of information derived in a party's tandem case because it is a matter of public record).  The Motions are now ripe for a determination.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Motions have been referred to this Court for recommendation.  The Court has reviewed the relevant pleadings, the case record and testimony and exhibits presented at the evidentiary hearing. For the reasons set forth below, the Court recommends that the Motion to Dismiss [#167] be **GRANTED** and that Plaintiff's case be **DISMISSED** pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i).  I further recommend that Plaintiff's Motion [#207] be

DENIED.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

By way of providing context to the Court's Recommendation, the following explains the factual and procedural background regarding Plaintiff's case. Plaintiff, who is proceeding *pro se*, is a prisoner at the federal government's maximum-security prison, ADX Florence ("ADX"). Plaintiff filed the present action in October 2007 and was given leave to proceed *in forma pauperis* [Docket Nos. 3 & 5]. Plaintiff contends that Defendants violated his constitutional right to be free from cruel and unusual punishment when they allegedly acted with deliberate indifference toward his serious medical needs by delaying and denying him adequate medical treatment for his "exposed jawbone." *Complaint* [#3] at 4. After adjudication of Defendants' first motion to dismiss the case on its merits, a single Eighth Amendment claim against Defendants in their individual capacities remains. However, as the Court noted in my prior Recommendation, the likelihood of Plaintiff's success on the remaining claim is far from clear. *Recommendation* [#110] at 15 (noting that "there remains the real possibility that Plaintiff may be unable to provide any evidentiary support for the allegations contained in his complaint against Defendants Nafziger and Wiley. However, it would be inappropriate for the Court to consider Plaintiff's likelihood of success on the potential evidence at this time.").

Since the filing of Plaintiff's Complaint, Plaintiff has filed fourteen motions seeking

---

[1] I recently issued a similar Recommendation in Plaintiff's tandem case, 07-cv-01839-WYD-KLM [Docket No. 344]. Pursuant to that Recommendation, I also recommended that Plaintiff be enjoined from filing future lawsuits in this District without following certain procedural requirements. *Recommendation* [#344] at 28-33. My Recommendation in that case remains pending. Given that the proposed injunction would impact any future case attempted to be filed by Plaintiff, I find it unnecessary to reassert that portion of my Recommendation herein. However, I note that the justifications provided for an injunction apply equally to the conduct Plaintiff exhibited in this case as well.

some form of injunctive relief [Docket Nos. 32, 37, 51, 107, 155, 176, 179, 182, 184, 186, 189, 193, 194 & 207].  All but Plaintiff's pending Motion for Injunction have been denied.[2] At the time Defendants filed their pending Motion to Dismiss, Plaintiff had filed approximately forty pleadings requesting relief, nearly all of which have been denied.  Since that time, Plaintiff has filed approximately twenty-five pleadings, the majority of which have been denied.

As an example, on October 23, 2008, Plaintiff filed a pleading titled "Motion to Compel Discovery and Motion for Sanctions" [Docket No. 131].  The motion requested that Defendants be compelled to respond to discovery propounded upon them, including that Plaintiff's requests for admissions be deemed to be admitted.   Unfortunately, Defendants did not timely respond to the motion and, consequently, the Court was not apprised of their position or the veracity of Plaintiff's assertions.  On December 4, 2008, the Court granted Plaintiff's motion in part by compelling Defendants to respond to discovery and deeming the requests for admissions to be admitted [Docket No. 142].  I denied Plaintiff's request for sanctions.   On December 12, 2009, Defendants filed a Motion for Reconsideration informing the Court that they had timely responded to the discovery requests propounded by Plaintiff (both by serving them by mail and by hand delivery), but had inadvertently neglected to respond to Plaintiff's motion to compel because counsel was on bereavement leave [Docket No. 146].  Defendants sought reconsideration of my Order because it "was based on an incorrect version of the facts" as relayed to the Court by Plaintiff.  *Motion*

---

[2] The majority of Plaintiff's motions seeking injunctive relief were denied as irrelevant, redundant, or unsupported.  Several were also denied without prejudice with leave to refile in a single, consolidated pleading [Docket No. 203].  Those allegations are now contained in Plaintiff's Motion for Injunction at issue here.

4

[#146] at 5.  Defendants also noted that despite the fact that Plaintiff received Defendants' discovery responses prior to the date his motion to compel was docketed, Plaintiff "failed to withdraw his motion or to otherwise indicate to the Court that his representations to the Court about not receiving the discovery were incorrect."  *Id.* at 6.  On January 12, 2009, I granted Defendants' motion and noted that while "Defendants' neglect contributed to my ruling on Plaintiff's [motion to compel], I find that the such neglect was excusable. Furthermore, because the Court now has all of the information available to it, I find that Defendants timely responded to Plaintiff's propounded discovery and that deeming Plaintiff's Requests for admissions to be admitted would be a manifestly unjust result." *Order* [#163] at 3.  To resolve what ultimately turned out to be a nonissue created by Plaintiff, whose conduct undoubtedly violates Fed. R. Civ. P. 11, the Court was prompted to unnecessarily spend a significant amount of time and energy relating to Plaintiff's motion [Docket Nos. 142 & 163].

Plaintiff has also sent several letters to the Court which, because of their offensive and threatening nature, have not been docketed and are on file with Chambers.  *Letter to Kristen L. Mix* dated 12/29/2008; *Letter to Kristen L. Mix* received on 2/23/2009 (on file with Chambers).  Finally, Plaintiff has sent at least one letter to Senator John McCain accusing the Court of causing the assault of three ADX inmates and allowing "blood [to be] spill[ed]." *Letter to Senator John McCain* received May 29, 2008 [Docket No. 89].  In Plaintiff's letter to Senator McCain, Plaintiff also indicates that he has sent a letter to former Justice of the Supreme Court, Sandra Day O'Connor, accusing the Court of judicial wrongdoing.

The majority of the filings referenced above provide the basis for Defendants' Motion to Dismiss at issue here.  *See Motion to Dismiss* [#167] at 2-7.  Plaintiff failed to respond

5

to the Motion to Dismiss within the deadline set by the Local Rules.  The Court has since learned that from January 7, 2009 to February 19, 2009, Defendants were withholding Plaintiff's legal mail while awaiting approval from the Bureau of Prison's regional counsel to put Plaintiff on special legal mail status, 28 C.F.R. § 540.18, as a result of his threatening letters sent at the end of 2008.  *See Hearing Tr.* [#339] at 120:22-:25 (07-cv-01839-WYD-KLM).  While the Court does not condone Defendants' unilateral decision to delay sending Plaintiff's legal mail for this month-and-a-half time period, particularly because such conduct does not appear to be authorized by any regulation or statute,[3] Defendants' conduct does not excuse Plaintiff's behavior throughout this case.  Moreover, to the extent that Defendants' conduct is not ongoing, even if improper, it cannot form the basis for any injunctive relief sought by Plaintiff.  *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005); *see also Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief only . . . it is insufficient for them to demonstrate only a past injury.")).

However, soon after Defendants assert that they resumed normal transmission of Plaintiff's mail, Plaintiff and other inmates began filing pleadings and letters accusing Defendants of withholding, and even destroying, Plaintiff's mail.  A timeline of events relevant to this matter is set forth below:

**Early Jan. 2009** – The Court received two pleadings from Plaintiff about his erratic mental state and desire to kill people [Docket Nos. 156 & 157].

_____

[3] The Court knows of no authority authorizing Defendants to take this action while awaiting approval from regional counsel to place Plaintiff on special legal mail status, nor have Defendants cited any authority.

**Early Jan. 2009** – The Court received a letter from Plaintiff threatening and making scandalous allegations about the Court (on file with Chambers).  Pursuant to this letter, and those sent by Plaintiff which contained threatening and offensive statements directed toward defense counsel and ADX attorney Deborah Locke,  *Letter to Deborah Locke* dated 12/31/2008 (on file with Chambers), the United States Marshal Service undertook an investigation into whether Plaintiff had the means or connections to carry out his threats.

**Jan. 7, 2009** – Defendants began withholding all of Plaintiff's outgoing mail, including legal mail.  *Hearing Tr.* [#339] at 120:22-:25; Docket No. 278 (08-cv-01789-WYD-KLM).

**Jan. 7, 2009** – The date of filing of the last pleading filed by Plaintiff until February 23, 2009 [Docket No. 159].

**February 17, 2009** – Defendants filed a Motion to Dismiss as a sanction [Docket No. 167].

**February 19, 2009** – The Court received a letter from ADX inmate Luke Preacher indicating that Plaintiff's mail was being withheld [Docket No. 169].  Mr. Preacher is a co-plaintiff with Plaintiff in another case pending in this District, 09-cv-00278-CMA-MEH. Although prior to filing of that case Plaintiff had already accumulated at least three strikes to prevent him from proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(g), Mr. Preacher paid the filing fee.

**February 19, 2009** – Defendants received permission to place Plaintiff on special legal mail status and stopped withholding Plaintiff's outgoing mail.  *Hearing Tr.* [#339] at 120:22-:25; Docket No. 278 (07-cv-01839-WYD-KLM).

**February 23-27, 2009** – The Court received and docketed all of Plaintiff's withheld

mail, some of it dating back to January 8, 2009.  Nearly twenty withheld pleadings were docketed in this case, and a similar number were docketed in several of his other pending cases, 07-cv-01839-WYD-KLM and 08-cv-00164-WYD-KLM.

**February 23, 2009** – The Court received a letter in an envelope addressed by Plaintiff.  Because the letter contained threatening language directed at the Court, it was not docketed (on file with Chambers).

**March 12, 2009** – The deadline for Plaintiff to respond to Defendants' Motion to Dismiss.  Prior to the deadline's expiration, Plaintiff filed a motion for an extension of time [Docket No. 197].  The Court extended the time for Plaintiff to respond to Defendants' Motion to Dismiss [Docket No. 206].  The new deadline was March 30, 2009.  Plaintiff did not respond.

**March 13, 2009** – The Court received Plaintiff's Motion for Injunction regarding the previous withholding of his mail which alleged that "if relief is not granted, the Defendants will continue to withhold Plaintiff's outgoing legal mail for days, weeks and even months . . . ." *Motion for Injunction* [#207] at 6.  The Court notes that around the time Plaintiff filed his Motion for Injunction and through July 8, 2009, Plaintiff has filed approximately six pleadings in this case; eleven pleadings in 07-cv-01839-WYD-KLM; twenty-four pleadings in 09-cv-00278-CMA-MEH (including three motions seeking injunctive relief); three pleadings in a case that has been closed since May 9, 2007, 06-cv-02105-WYD-PAC; and a new habeas petition pursuant to 28 U.S.C. § 2241, 09-cv-00933-BNB (Plaintiff's habeas case was terminated on June 26, 2009 for Plaintiff's failure to exhaust his claims [Docket No. 7]).

**March 30, 2009** – On the date that Plaintiff's response to Defendants' Motion to

Dismiss was due, the Court received a letter from Plaintiff indicating that Defendants continue to withhold his mail and that some of his mail is being destroyed [Docket No. 213]. He did not, however, attach his response to the Motion to Dismiss to the letter or send it separately.

**April 15, 2009** – After Plaintiff did not respond to Defendants' Motion to Dismiss within the extended deadline to do so, the Court directed each party to file a status report regarding the current status of Plaintiff's incoming and outgoing mail in 07-cv-01839-WYD-KLM [Docket No. 316]. Plaintiff did not respond. Defendants responded that since mid-February, none of Plaintiff's mail was being unnecessarily delayed and none had been withheld or destroyed [Docket No. 321]. *Affidavit of Kelly Dell* [#321-2] at 3.

**April 28, 2009** – Defendants in this case filed an unsolicited Status Report asking the Court to grant their Motion to Dismiss because Plaintiff failed to file a response despite being given an extension of time to do so [Docket No. 215]

**April 28, 2009** – The Court ordered Plaintiff to show cause why his case should not be dismissed pursuant to Defendants' Motion to Dismiss and for failure to comply with Court Orders [Docket No. 216]. The Court also extended the time for Plaintiff to respond to Defendants' Motion to Dismiss. Again, Plaintiff did not respond.

**May 5, 2009** – The Court received letters from ADX inmate Damani Nantambu indicating that Plaintiff's mail was being withheld [Docket Nos. 219 & 220]. Mr. Nantambu is also Plaintiff's co-plaintiff in 09-cv-00278-CMA-MEH.

**May 8, 2009** – Given the lack of filing of Plaintiff's response to Defendants' Motion to Dismiss in both 07-cv-01839-WYD-KLM and this case, the Court set a hearing for May 22, 2009 to address the status of Plaintiff's mail [Docket No. 326]. The Court directed

Plaintiff to bring a copy of his response to Defendants' Motion to Dismiss to the hearing.

**May 14, 2009** – The Court received a letter from ADX inmate Ronnie Beverly indicating that Plaintiff's outgoing mail was being withheld [Docket No. 221].

**May 21, 2009** – In 07-cv-01839-WYD-KLM, the Court received a motion from Defendants requesting that the Court strike the inmate letters filed on behalf of Plaintiff [Docket No. 330]. The motion is relevant here because the Court received identical inmate letters in the present case. Attached to Defendants' motion in 07-cv-01839-WYD-KLM is a letter from ADX inmate Shawn Williams to Ms. Locke, claiming that Plaintiff asked him to be a witness at the hearing on May 22, 2009 and to lie on his behalf [Docket No. 330-4]. Mr. Williams also claimed that Plaintiff intended to have other ADX inmates lie for him at the hearing and "set up a slew/bunch of ADX officials/staff." Defendants also attached a letter from ADX inmate Raymond Oechsle that they received close in time to when Mr. Oechsle voluntarily dismissed his claims from this case [Docket No. 330-3]. In the letter, Mr. Oechsle addressed Plaintiff's willingness to lie to the Court, forge documents, and have others lie on his behalf. Finally, Defendants attached two witness lists for the May 22, 2009 hearing prepared by Plaintiff; the first listed Mr. Williams as a witness for Plaintiff and the second replaced Mr. Williams with Mr. Preacher [Docket Nos. 330-2 & 330-5].

**May 22, 2009** – At the May 22, 2009 hearing, Plaintiff called three inmate witnesses to testify on his behalf: (1) Mr. Preacher; (2) Mr. Gambina; and (3) Mr. Nantambu. Plaintiff was also questioned by the Court and cross examined by defense counsel. Defendants called two witnesses: (1) Richard Madison (Plaintiff's case manager from March 18, 2009 to May 15, 2009); and (2) Kelly Dell (the ADX staff member who handles all of Plaintiff's outgoing mail once it reaches the ADX mail room). The Court summarizes the parties'

arguments and testimony as follows:

Of Plaintiff's three inmate witnesses, only the testimony of Mr. Nantambu was relevant to the issue of whether Defendants are presently withholding or destroying portions of Plaintiff's legal mail.  Briefly, Mr. Preacher and Mr. Gambina testified only about their knowledge of the withholding of Plaintiff's mail during or immediately prior to the time period when Defendants admit to withholding Plaintiff's mail, e.g., January to mid-February 2009. *See, e.g.*, *Hearing Tr.* [#339] at 8, 13 (Mr. Preacher); 22, 26 (Mr. Gambina) (07-cv-01839-WYD-KLM).  Because the Court is already aware that ADX officials were withholding Plaintiff's mail during this time period while they were awaiting approval of special legal mail status, this testimony is not relevant to the issue of whether Plaintiff's legal mail is *currently* being withheld or destroyed.

Further, much of Plaintiff's testimony regarding the withholding and alleged destruction of his mail related to the January to mid-February time period and is equally irrelevant to the issue of how ADX officials are *currently* handling Plaintiff's legal mail.  *See, e.g.*, *id.* at 65-68; 138-42; *see also id.* at 143:12-144:6.  The relevant portions of Mr. Nantambu's and Plaintiff's testimony are described below.

### Damani Nantambu

(1) He testified that prior to his appearance at the hearing, he received a threat from an ADX staff member, Officer Manspeaker (who is not a named party), about testifying on Plaintiff's behalf.  *Id.* at 36:8-:19.  He believes that due to his support of Plaintiff, ADX officials have been preventing him from having paper, recreation, library access, food, etc. *Id.*  He also testified that ADX officials have recently dubbed him as Plaintiff's "puppy dog." *Id.* at 36:18-:19, 36:24-37:2.

(2) He initially testified that Plaintiff told him about a conversation he had with Defendant Ron Wiley (ADX warden) regarding Plaintiff's mail. *Id.* at 43:19-44:9. He later claimed that he heard this conversation personally. *See id.* at 61:18-:22. The gist of the conversation is that Defendant Wiley allegedly told Plaintiff that even if ADX staff was throwing Plaintiff's mail in the trash, they have good reason to do so given Plaintiff's lawsuits against him and his staff. *Id.* at 46:19-47:2; 62:24-63:25.

(3) He testified that during the week of May 18, 2009, he heard Defendant Wiley tell Plaintiff that he gives the orders at ADX, and that he won't take orders from the Court. *Id.* at 46:22-47:2.

(4) He testified that ADX officials impose paper, hygiene, and library restrictions on him and Plaintiff at will. *Id.* at 53.

(5) He testified that sometime in April 2009, he heard ADX officers tell Plaintiff that he was on mail restriction and that any mail could be thrown in trash. *Id.* at 56:20-57:3. He testified that in response to the conversations he overheard, he sent a letter to the Court indicating that Defendants were withholding Plaintiff's mail. *Id.* at 61:12-62:23. While Plaintiff asked him to write on Plaintiff's behalf, the letter was based on conversations Mr. Nantambu allegedly heard between Plaintiff and Defendant Wiley, Officer Manspeaker or ADX officials. *Id.*

### Plaintiff Stine

(1) He testified that he tried to send his response to Defendants' Motions to Dismiss to the Court six times, but ADX officials destroyed each response. *Id.* at 73:13-74:7. He claimed that he kept detailed mail logs that show when he mailed his responses to Defendants' Motion to Dismiss, which is also allegedly supported by USPS track and

confirm slips he retained.  *Id.* at 69-71; *Plaintiff's Exs.* 11 & 12.[4]  As has been Plaintiff's common practice in his various cases, the mail logs appear to indicate that Plaintiff sent the same response to Defendants' Motion to Dismiss in both 07-cv-01839-WYD-KLM and this case.  Although the Court instructed him in writing to bring a copy of the response to the Motion to Dismiss to the hearing, he testified that he gave his only copy to an ADX official for mailing before the hearing and neglected to keep a copy for himself.  Plaintiff could not remember the name of the official he allegedly provided the response to for mailing.  He admitted that he was on notice to bring a copy to the hearing and that he had retained a copy the five previous times when he allegedly mailed the response to the Court.  *Hearing Tr.* [#339] at 73:16-:20; 74:2-:22; 96:20-98:8 (07-cv-01839-WYD-KLM).

(2) He testified that he sent multiple pleadings that the Court allegedly did not receive.  *Id.* at 71-74; 81-93.  The Court notes that the majority of the pleadings identified by Plaintiff were received in either this case or 07-cv-01839-WYD-KLM:  (1) Motion for Protective Order (received) [Docket Nos. 174, 184 & 194 in this case and Docket No. 287 in 07-cv-01839-WYD-KLM]; (2) Motion to Compel (received) [Docket No. 314 in 07-cv-01839-WYD-KLM]; (3) response to Defendants' Motion to Dismiss (not received); (4) letters about his mail (received) [Docket Nos. 169, 213, 219, 220 & 221]; (5) Motion for Preliminary Injunction (received) [Docket Nos. 207]; (6) Motion for Summary Judgment (received) [Docket Nos. 135 & 173].  Plaintiff claimed that he failed to keep copies of any of the

---

[4] The Court has reviewed Plaintiff's mail log exhibits and notes that although they purport to convey a contemporaneous list of the mailings sent by Plaintiff over a period of time, the exhibits do not have the earmarks of documents containing entries made on an event-by-event basis.  Rather, the documents appear to have been created in one sitting, meaning there are no deviations in penmanship, changes in the thickness of the handwriting, or similar detail suggesting that the documents were truly created contemporaneously with Plaintiff's mailings.  Moreover, even if the mail logs reflect an accurate depiction of Plaintiff's mailings, they are incomplete and cover only the time period from March 9, 2009 to May 15, 2009.

"missing" pleadings.

(3) He testified that he mailed objections to my Recommendation to dismiss his case in 08-cv-00164-WYD-KLM. *Hearing Tr.* [#339] at 78-79, 92 (07-cv-01839-WYD-KLM). The Court did not receive any objections by Plaintiff to that Recommendation. Despite his alleged making of objections, Plaintiff stated that he is willing to voluntarily dismiss that case because he does not have "the time . . . to comply" and is no longer interested in litigating the issues raised therein. *Id.* at 78:20-79:1; 92:12-:20. The Court notes that since the hearing, the parties have filed a stipulation to dismiss Plaintiff's case with prejudice and 08-cv-00164-WYD-KLM is now terminated [Docket No. 173].

(4) Plaintiff testified that he was not able to explain why the Court receives the pleadings he mails regarding his other pending case against ADX officials, 09-cv-00278-CMA-MEH. *Hearing Tr.* [#339] at 79:5-:20 (07-cv-01839-WYD-KLM).

(5) On cross examination, Plaintiff testified that he did not remember when he first sent his response to Defendants' Motion to Dismiss to the Court. *Id.* at 85:20-86:20. He also claimed that he did not remember what the response said or any arguments he raised. *Id.* at 87:8-88:23. He claimed that he thought it was between 90-100 pages long with exhibits. *Id.* at 86-87. He also claimed that he did not remember the arguments he made in a Motion for Summary Judgment he purportedly mailed.

As noted above, Defendants called two witnesses at the May 22, 2009 hearing: (1) Richard Madison (Plaintiff's case manager); and (2) Kelly Dell (ADX mail room staff). The relevant portions of Mr. Madison's and Ms. Dell's testimony are described below.

**<u>Richard Madison</u>**

(1) He testified that one of his responsibilities while serving as Plaintiff's case

manager was to pick up Plaintiff's legal mail and deliver it to the mail room.  *Id.* at 99-101. In relation to legal mail, he examined the mail for contraband, then gave it to Plaintiff to seal.  He then took the mail to the ADX mail room.  He testified that Defendant Wiley is not involved in this process.  *Id.* at 101:11-:13.

(2) He testified that he has never thrown away any of Plaintiff's mail.  *Id.* at 101:14-102-:2.  On cross examination, he admitted that he is not the only ADX official who is authorized to pick up Plaintiff's legal mail.  *Id.* at 110:14-11:24.  He testified that any unit team member on Plaintiff's cell range may pick up Plaintiff's mail, but he claimed not to have any knowledge about whether others did in fact pick up Plaintiff's mail.  *Id.*

(3) He testified that it is difficult for inmates to hear from cell to cell on the A range (where Plaintiff and Mr. Namtambu are housed in ADX) because the inmates are almost never quiet.  *Id.* at 107:14-108:1.

(4) He testified that in all of Plaintiff's legal mail he reviewed from March 18, 2009 until May 15, 2009, he did not recall ever seeing a response to Defendants' Motion to Dismiss. *Id.* at 99:17-:20; 111:7-:8; 109:19-110:8.  By contrast, during the time period when Mr. Madison was Plaintiff's case manager, Plaintiff testified that he tried to mail copies of his response to the Motion to Dismiss to the Court on three occasions.  *Id.* at 70:1-:4; 71:24-74:7.

### **Kelly Dell**

(1) She testified that she has handled Plaintiff's mail, including all of his legal mail, since his transfer to ADX.  *Id.* at 114:14-:17; 120:4-:9.

(2) She testified that when she receives Plaintiff's legal mail from his case manager, it is sealed.  *Id.* at 115:22-116:21; 129:1-:18.  Given Plaintiff's special legal mail status, she

contacts the addressee for permission to open the mail for the purpose of screening it for threats. *Id.* at 116:22-117:8.  After she reads the mail, she reseals and mails it that day. *Id.*  If the addressee does not give permission for the mail to be opened, the legal mail is not read and is then mailed. *Id.* at 117:9-:13.  She testified that Defendant Wiley is not involved in this process. *Id.* at 118:1-:5.

(3) She testified that she has never destroyed Plaintiff's legal mail. *Id.* at 117-118. She also claimed that she has never rejected or confiscated any mail sent to the Court, either before or after Plaintiff was placed on special legal mail status. *Id.* at 118:16-120:1; 129:18-:20; 131:21-:25.

(4) She testified that she withheld Plaintiff's legal mail from Jan. 7, 2009 to Feb 19, 2009. *Id.* at 120:22-:25.

**Plaintiff's Closing Arguments**

Plaintiff argued that the validity of his special legal mail status is questionable, and that ADX officials had no authority to withhold his legal mail while such status was being sought. *Id.* at 137:8-139:20; 140:5-:10; 141:23-142:25.  He argued that unnamed ADX officials continue to pick up his mail, but the Court does not receive it. *Id.* at 139:20-140:4 In a case pending in the Central District of California, Plaintiff claimed that discovery sanctions were imposed against him by the Court due to Defendants' withholding of his mail.[5] *Id.* at 68:22-69:11; 140:2-:4.

---

[5] Plaintiff filed a civil rights action in the Central District of California which involves alleged First, Fifth and Eighth Amendment violations, 5:08-cv-00251-RGK-MLG.  The Court has reviewed the docket in that case and has been unable to locate an order imposing sanctions upon Plaintiff.  Moreover, I note the lenience of the Magistrate Judge presiding over that case, Hon. Marc L. Goldman, in that Judge Goldman credited Plaintiff's contention that Defendants were delaying Plaintiff's mail from January to mid-February 2009 and extended Plaintiff's deadline to respond to outstanding discovery requests [Docket Nos. 89 & 91].  In short, I ascertain no prejudice or injury to Plaintiff regarding the status of his mail from the face of the

**Defendants' Closing Arguments**

Defense counsel argued that there is no credible evidence that Plaintiff's legal mail has been confiscated or destroyed.  *Id.* at 143:8-:11; 146:25-147:3.  She did not dispute that Plaintiff's legal mail was withheld from January to mid-February 2009, but argued that there is no direct evidence that any of the delayed mail, or Plaintiff's legal mail thereafter, was not received by the Court.  *Id.* at 143:12-:18.  She argued that none of Plaintiff's witnesses are credible and that the testimony of Mr. Preacher and Mr. Nantambu should be viewed critically because they are co-plaintiffs of Mr. Stine in another pending case.  In any event, she noted that most of the testimony derived from the witnesses related to the withholding of Plaintiff's legal mail during the time period when ADX officials admit to withholding his mail.  *Id.* at 143:19-144:24.

Defense counsel also argued that Plaintiff's professed inability to remember the contents of his response to Defendants' Motion to Dismiss or the date when he first mailed it to the Court undermines his credibility.  *Id.* at 144:25-145:13.  She noted that if such a response existed, Plaintiff could have brought it to the hearing.  *Id.* at 145:14-:23.  She argued that the only logical conclusion is that Plaintiff never responded to the Motion to Dismiss and is now attempting to use his special legal mail status and ADX officials' previous withholding of his mail as an excuse to mislead the Court.  *Id.* at 145:23-146:2; 147:8-:13.[6]

Defense counsel reminded the Court of Plaintiff's history of not responding to

docket and note that Plaintiff's testimony that sanctions have been imposed lacks factual support.  *See Hearing Tr.* [#339] at 68:22-69:5 (07-cv-01839-WYD-KLM).

[6] The Court notes that since the date of the hearing, Plaintiff has sent multiple pleadings to the Court in his many cases, whether they remain open or are closed, but the Court has not received Plaintiff's response to the Motion to Dismiss in this case or 07-cv-01839-WYD-KLM.

dispositive motions when there was a likelihood that they would be granted.  *Id.* at 146:3-:24.  In 07-cv-00121-WYD-KLM, Plaintiff failed to respond to the pending Motion to Dismiss.  *Id.*  In a hearing held in that case, he was also found not to be a credible witness, to have lied under oath, and to have submitted a forged document to the Court.  *Id.*  She contended that Plaintiff's current conduct should be viewed similarly.  Finally, she noted that the dockets in all of Plaintiff's cases belie Plaintiff's testimony that the Court is not receiving his legal mail.  *Id.* at 147:4-:7.

## II.  PENDING MOTIONS

As noted above, the matter is before the Court on both Defendants' Motion to Dismiss and Plaintiff's Motion for Injunction.  The Motions are related in that Plaintiff failed to file a response to Defendants' Motion to Dismiss (despite several Court Orders to do so) because he contends that Defendants are unlawfully withholding his mail, including his response.  The alleged withholding of Plaintiff's mail is the subject of Plaintiff's Motion for Injunction.

In support of their Motion to Dismiss, Defendants argue that "Plaintiff Stine has filed frivolous pleadings which were 'filed for the sole purpose of harassing Defendants' (Doc. 55), and the Court has found 'Plaintiff's objections to be frivolous' (Doc. 64)."  *Motion to Dismiss* [#167] at 1.  Defendants also argue that "Plaintiff has made filings or failed to make filings that were in direct violation of this Court's orders."  *Id.* at 2 (citing Fed. R. Civ. P. 41).  Defendants contend that Plaintiff "has proceeded in a frivolous and malicious manner, thereby warranting dismissal under 28 U.S.C. § 1915(e)" and "failed to make the required payments or certifications under 28 U.S.C. § 1915."  *Id.*  Defendants also trace the history of the pleadings filed by Plaintiff in this case and others and the Court's repetitive warnings

that sanctions would result if Plaintiff continued to inundate the Court with frivolous and malicious filings.  The Court organizes the relevant information as follows:  (1) the Court's warnings about filing frivolous, irrelevant or abusive pleadings; (2) Plaintiff's abusive pleadings and letters; and (3) Plaintiff's threatening pleadings and letters.  Although not necessarily relied upon by Defendants, I also note that (4) Plaintiff has filed documents of questionable veracity; and (5) Plaintiff has a history of litigious behavior in this and other cases.

(1)     Plaintiff has been warned on multiple occasions in this case about the filing of frivolous, redundant, irrelevant or malicious pleadings.  For example, I denied Plaintiff's Motion for Sanctions [Docket No. 51] because it was "frivolous and filed for the sole purpose of harassing defendants."  *Order* [#55] at 1.   I also found that Plaintiff's attempts to propound discovery during a stay of discovery were in violation of my prior Order.  *Order* [#84] at 2; *Order* [#88] at 2-3.  Further, I twice struck dispositive motions filed by Plaintiff because they did not comply with relevant practice standards [Docket Nos. 142 & 188].  I denied at least four of Plaintiff's motions for injunctive or other forms of relief and repeatedly informed Plaintiff that such motions were irrelevant and directed against improper parties.  *See, e.g., Order* [#36] at 1-2; *Order* [#56] at 1; *Order* [#109] at 2-3; *Order* [#161] at 1.   Chief Judge Wiley Y. Daniel found that objections filed by Plaintiff were "frivolous."   *Order* [#64] at 1.   Judge Daniel also noted that Plaintiff's objections had no merit and were based on conclusory statements "raised in previous pleadings in this and other cases filed by Plaintiff, contentions which have previously been rejected and which" were again rejected.   *Order* [#83] at 1-2.  Judge Daniel informed Plaintiff that he "cannot ignore warnings of the Court" and noted that Plaintiff continues to make "unfounded and

conclusory statements in his Objections about bias and prejudice on the part of Magistrate Judge Mix which I find are not supported by the record." *Order* [#102] at 2-3;

(2)     Plaintiff has sent or filed pleadings and letters which contain malicious, abusive, and offensive language.  Plaintiff accused this Court of being "Hilter reincarnated" and "uncapable [sic] of fair judgments," allowing crucial evidence to be destroyed, allowing Plaintiff to be "marched to the gas chamber," using my "judicial powers to protect Defendants" while they torture him, allowing the "killing [of] inmates with the courts [sic] blind eyes," and hoping for Plaintiff's death [Docket Nos. 41, 57, 61, 90 & 155].  Plaintiff accused Defendants of engaging in "illegal behaviors," subjecting him to "barbaric and demoralizing treatment" and "dragging up the monster" in him [Docket No. 156].  In a letter sent to Senator John McCain, Plaintiff accused me of allowing inmates to be assaulted and "hid[ing] behind [my] judge ship [sic]" [Docket No. 89].  In particularly offensive letters on file with the Court, Plaintiff accused the Court and defense counsel in another matter of having an inappropriate relationship.  *Letter to Barack Obama* dated 11/17/2008 (on file with Chambers).[7]  Plaintiff's accusations became even more defamatory in a letter sent to the Court where he said that he hoped I would "fall over dead."  *Letter to Kristen L. Mix* dated 12/29/2008;

(3)     Plaintiff has sent or filed several pleadings and letters which contain threats of harm.  For example, Plaintiff informed then President-elect Obama: "People wonder why prisoners leave prison with only hate and murderful [sic] thoughts. . . .   Straight out Mr.

---

[7] Interestingly, Plaintiff also accused another Magistrate Judge of having an inappropriate relationship with this counsel.  That accusation was found to be entirely without merit and malicious.  *See, e.g.*, 07-cv-00121-WYD-KLM [Docket Nos. 213 at 3-5 & 192 at 17-18].

Obama, I should never be allowed out of prison because my hate . . . has reach [sic] the point of . . . seeing [people] die most painful ways." *Letter to Barack Obama* dated 11/17/2008.   In an objection filed with Chief Judge Daniel, "Plaintiff states maybe the Magistrate should allow a records secretary to grind down exposed bone and see how she feels . . . " [Docket No. 90].   In a letter sent to the Court, Plaintiff threatened the Court, Defendant Wiley and defense counsel in another matter with harm to them and their families, including that they should suffer "most painful deaths God can instill . . . ." *Letter to Kristen L. Mix* dated 12/29/2008.   In an unsigned letter sent in an envelope written by and addressed from Plaintiff to the Court, the author of the letter conveyed the desire for terrible harm to befall the Court.   *Letter to Kristen L. Mix* received on 2/23/2009.   In a pleading filed on the docket, Plaintiff stated that he goes "to sleep thinking of ways to murder the ones inflicting [pain] . . . .   I fully believe within the next few days I will have committed murder.   Well Judge Wiley Daniel, its [sic] now reached a point of no return and I've made sure that my family will not let it go . . ." [Docket No. 156];

(4)      Plaintiff has filed multiple pleadings of questionable veracity.   For example, Plaintiff filed a motion contending that he was being deprived of paper and mail supplies [Docket No. 107].   I noted that "the frequency with which Plaintiff files motions in this and other cases pending before the Court belies the assertion that he is suffering an injury from an alleged lack of access to paper and mail services."   *Order* [#109] at 3.  Plaintiff filed a motion in his handwriting asking for an extension of time, which was granted [Docket Nos. 111 & 113].   Inexplicably, Plaintiff then filed a motion to strike Docket Nos. 111 and 113, claiming that the earlier motion had not been written by him and was a forgery [Docket No. 117].   Given this Court's overwhelming familiarity with Plaintiff's handwriting, spelling,

syntax, and grammar, I rejected Plaintiff's contention that the motion was forged and noted that contrary to Plaintiff's argument, "it [was] highly unlikely that these pleadings were drafted and signed by anyone other than Plaintiff." *Order* [#120] at 1.  As detailed above, Plaintiff filed a motion to compel seeking sanctions against Defendants because he allegedly did not receive their discovery responses [Docket No. 131].  I ultimately found that there was no support for Plaintiff's contentions.  *Order* [#163] at 2.  Further, Plaintiff filed a pleading alleging that Defendants confiscated his case file [Docket No. 197]; however, Defendants filed an affidavit informing the Court that they had not taken his case file as evidenced by a document log signed by Plaintiff [Docket Nos. 205 & 205-2].  Finally, I note that in Plaintiff's Motion for Injunction, Plaintiff claims that he has never made any threats against the Court and that he "denys [sic] writing alleged letters" [Docket No. 207].  However, there is no doubt that the Court has received letters written in Plaintiff's handwriting, signed by Plaintiff, and sent in envelopes written and addressed by Plaintiff, that contain threats; and

(5)    Plaintiff has a longstanding history of litigious behavior in this District and in other districts across the country.  Plaintiff has filed thirteen cases since October 2006 in this District alone (three of which remain pending), as well as a large number of cases in other federal courts across the country.[8]  Moreover, the Court notes the many Orders that

---

[8] The Court takes judicial notice of the complaint filed by Plaintiff in 08-cv-00298-ZLW, wherein Plaintiff provides his past and current federal lawsuits in what purports to be an exhaustive list [Docket No. 3].  At the time of its filing, Plaintiff had twenty-seven past and present federal actions.  Since that time Plaintiff has filed three additional cases in this District.  These numbers do not also include the number of appeals Plaintiff has filed to date.  In addition to this Court, the Court notes that Plaintiff has filed cases in the Southern District of Texas, District of Arizona, the Western District of Kentucky, the Middle District of Florida, the Eastern District of Florida, the Southern District of Illinois, the Western District of Missouri, the District of South Carolina, the Southern District of California, and the Central District of California.  As noted earlier, the Court takes judicial notice that Plaintiff has at least one pending case in the

judges of this District have entered addressing Plaintiff's malicious and frivolous filings.[9]

As noted above, in this case alone, Plaintiff has been warned by this Court and the District

Court about the filing of frivolous, irrelevant or meritless pleadings.  Further, the Court notes

that out of the thirteen cases Plaintiff has filed in this District, he has filed approximately

seventy motions seeking some form of injunctive relief, none of which has been granted.

While the quantity of Plaintiff's motions is not necessarily the prevailing concern here, the

Court notes that the quality of the motions in almost every instance is lacking, evidencing

repeated violations of Fed. R. Civ. P. 11 and the Court's prior Orders.

The Court also notes Plaintiff's history of making false statements, not only on this

record, but in previous cases.  Plaintiff submitted a forged document into evidence in 07-cv-

---

Central District of California which was filed on February 29, 2008, 5:08-cv-00251-RGK-MLG. As a result of the Court's review of Plaintiff's filings across districts, the Court notes that Plaintiff appears to have at least five pending cases: three in this District, one in the Southern District of Texas, and one in the Central District of California.  Since the filing of my Recommendation in 07-cv-01839-WYD-KLM, Plaintiff's fourth case pending in this District, 09-cv-00933-BNB, has been dismissed during preliminary review.

[9] The following represent only a sample of Orders that have been issued against Plaintiff that speak to this issue.  In 07-cv-00121-WYD-KLM, the Court denied Plaintiff's motion because it contained "at least one untruthful statement" [Docket No. 212].  The Court also sanctioned Plaintiff for filing unnecessary pleadings [Docket No. 190].  The Court found that Plaintiff had committed "contumacious behavior," had lied under oath, had filed false pleadings, and had submitted a forged document into evidence.  In 07-cv-00799-WYD-KLM, Plaintiff was warned about the "malicious attempts by Plaintiff to inundate the Court with unnecessary filings" [Docket No. 22].  Plaintiff was also sanctioned by this Court for his continued filing of the same motion by striking the redundant documents and requiring that Plaintiff seek leave of the Court before filing any new motion [Docket No. 106].   In 07-cv-01248-ZLW, Plaintiff was cautioned about "his filings [which were] for the most part unnecessary and [were] a malicious attempt to inundate the Court" [Docket No. 12].  In 07-cv-01839, Magistrate Judge Boyd N. Boland found that "[t]he exhibits and letters [filed by Plaintiff] border on being malicious and frivolous and may subject Plaintiff[] to possible sanctions."  *Order* ]#16] at 2.  This Court struck several of Plaintiff's pleadings from the docket because they contained false accusations and were abusive [Docket No. 76].  Chief Judge Wiley Y. Daniel warned Plaintiff that "abusive pleadings will result in the imposition of sanctions, including entry of an injunction prohibiting him from filing future pleadings and/or [dismissal]."  *Order* [#240] at 2.   In 09-cv-00278-CMA-MEH, Plaintiff was warned about his "obligation to file specific, non-frivolous pleadings that comply with both local and federal court rules" [Docket No. 77].

00121-WYD-KLM. *Recommendation* [#192] at 17. Plaintiff also lied under oath at a hearing and in his deposition testimony. *Id.* Plaintiff submitted false pleadings in that case [Docket Nos. 44, 113, 122 & 145], in 07-cv-01839-WYD-KLM [Docket No. 14], and in 07-cv-00799-WYD-KLM [Docket No. 55]. Further, I note Plaintiff's testimony at the May 22, 2009 hearing where he informed the Court that he had been sanctioned by the District Court for the Central District of California, *Hearing Tr.* [#339] at 68:22-69:5 (07-cv-01839-WYD-KLM), but no such court order exists. In my Recommendation issued in 07-cv-01839-WYD-KLM, I found that the mail logs submitted by Plaintiff at the May 22, 2009 hearing were not credible, that he had presented his own testimony and that of witnesses which lacked credibility, and that there was no credible evidence that Plaintiff had ever created or mailed a response to Defendants' pending Motion to Dismiss. *Recommendation* [#344] at 10, 21-22. These same findings are equally applicable here given their relevance to the pending Motions.

The Court is also mindful of unsolicited letters received by defense counsel in another matter regarding Plaintiff's willingness to lie to the Court and enlist others to lie on his behalf. In the Court's estimation, these inmates likely gain very little by playing the role of whistle blower and, in fact, likely subject themselves to ridicule or worse by other inmates. The Court notes the statements made by ADX inmate Raymond Oecshle, that Plaintiff forged his signature on countless pleadings filed in 07-cv-01839-WYD-KLM, filed "bogus declarations," and "is knowingly & intentionally committing a multitude of Federal Crimes [by filing false documents]" [Docket No. 330-3]. The Court also notes the statements made by ADX inmate Shawn Williams, which are also relevant to the Motions at issue here. Plaintiff intended to call Mr. Williams as a witness at the May 22, 2009

hearing held in 07-cv-01839-WYD-KLM.  Shortly before the hearing, Mr. Williams informed ADX attorney, Ms. Locke, that "[i]nmate Mikeal Glenn Stine . . . is a liar & fraud . . . and he/Stine wanted me to LIE for him at the upcoming 05/22/09 hearing" [Docket No. 330-4]. He further stated that he "played this inmate Stine to find out the real deal . . . now I know . . . [that he] is planning to get other inmates to lie/testify, etc., for him [including] . . . Luke Preacher, . . . Ralph Gambina, [and] Damonde Nantambul [sic] . . . ."  The credibility of Mr. Oecshle's and Mr. Williams' letters have not been tested.   However, in relation to Mr. William's letter, the Court notes that the three inmates identified in the letter did testify for Plaintiff at the May 22, 2009 hearing and that Mr. Williams was originally listed by Plaintiff as a witness on his behalf but was removed by Plaintiff from his witness list just prior to the hearing.

The Court treats Plaintiff's false filings and allegations that he solicited others to lie on his behalf very seriously.  In addition, I note that submission of a false document to the Court and suborning perjury are criminal acts.  *See* 18 U.S.C. §§ 401, 1622.  Further, this is not the first time a federal court has addressed Plaintiff's false filings.  The Court takes judicial notice that Plaintiff was previously convicted of criminal contempt for submitting a document found not to be genuine in an attempt to avoid dismissal of one of his cases. *United States v. Stine*, 70 F.3d 121 (table) (9th Cir. 1995) (unpublished decision), *aff'g* No. 94-mc-00044-PGR (D. Ariz. Nov. 28, 1994). The Ninth Circuit found that "Stine did not have a good faith belief that the exhaustion letter was genuine" and affirmed his conviction for criminal contempt.  *Id.*

## III.  THE COURT'S FINDINGS

Considering the information, evidence, testimony, documents, exhibits and pleadings

set forth above, the Court finds as follows:

(1)     The testimony presented by Plaintiff at the May 22, 2009 hearing (which is relevant to the pending Motions) that Defendants are destroying his legal mail was not credible;

(2)     There is no credible evidence that Plaintiff prepared or sent a response to the Motion to Dismiss to the Court;

(3)     Defendants had no authority to withhold Plaintiff's mail from January to mid-February 2009;

(4)     There is no credible evidence that Defendants are currently withholding or destroying Plaintiff's legal mail;

(5)     There is credible evidence that Plaintiff has filed false pleadings on the record;

(6)     Plaintiff has filed or sent malicious and abusive documents;

(7)     Plaintiff has threatened and harassed the Court;

(8)     Plaintiff has inundated the Court with meritless and frivolous filings;

(9)     Plaintiff has failed to comply with at least two Court Orders in this case regarding the filing of his response to the Motion to Dismiss [Docket Nos. 206 & 216]; and

(10)    Plaintiff has failed to comply with multiple Court Orders in this case and others regarding the filing of frivolous, meritless, malicious and abusive pleadings.[10]

_____

[10] Although I do not base my Recommendation on this fact, I also find that since April 23, 2009 [Docket No. 214], Plaintiff has failed to comply with the Court's Order regarding the payment of his filing fees and his obligation to show cause why he cannot pay each month

## IV.  RECOMMENDATION

In light of the above findings, the Court recommends that Plaintiff's case be dismissed as a sanction pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i). The Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" . . . at issue . . . .'" *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (citation omitted).  In *Ehrenhaus*, the Tenth Circuit enumerated the factors to be considered when evaluating grounds for dismissal of an action.  The factors are:  "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."  *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.,* 167 F.R.D. 90, 101 (D. Colo. 1996).  "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).  Given that Plaintiff is proceeding *pro se*, the Court must carefully conduct its analysis and consider whether "some sanction other than dismissal [with prejudice is appropriate], so that the party does not unknowingly lose [his] right of access to the courts . . . ."  *Nasious v. Two Unknown BICE Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 920 n.3).

---

[Docket No. 5].  Plaintiff has been frequently warned about the necessity to timely comply [Docket Nos. 101, 113 & 140].  This failure alone warrants dismissal of Plaintiff's case. *See, e.g.*, *West v. Denver County Jail Warden*, 07-cv-00226-REB-KLM, 2008 WL 732600 (D. Colo. Mar. 18, 2008) (unpublished decision); *Walker v. Fitzgibbons*, 06-cv-02411-MSK-KLM, 2008 WL 384564 (D. Colo. Feb. 8, 2008) (unpublished decision).

The Court notes that the standards for dismissal pursuant to Rule 41(b) are essentially the same as those utilized for discovery violations.  *See Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994) ("[W]e see no principled distinction between sanctions imposed for discovery violations and sanctions imposed for noncompliance with other orders [and] . . . involuntary dismissals should be determined by reference to the *Ehrenhaus* criteria.").  Rule 41(b) authorizes the Court to dismiss Plaintiff's case due to his failure to prosecute his case and failure to comply with Court rules or Orders.  Fed. R. Civ. P. 41(b).  Finally, although Plaintiff is proceeding *pro se*, he is not immune from Rule 41(b) sanctions.  *See, e.g.*, *Steiner v. Concentra Inc.*, 195 Fed. Appx. 723, 727-28 (10th Cir. 2006) (unpublished decision); *Clements v. Chapman*, 189 Fed. Appx. 688, 692-93 (10th Cir. 2006) (unpublished decision).

## A.    Prejudice to Defendants

I find that Plaintiff's conduct prejudiced Defendants' ability to defend against the accusations lodged by Plaintiff in his Complaint.  In this regard, the Court notes that Plaintiff's abuses have caused Defendants to expend unnecessary resources and time to refute Plaintiff's wholly unsupported accusations, including those regarding the confiscation of his court documents and the alleged destruction of his mail.  In addition, the large number of meritless or frivolous pleadings filed in this case, to which Defendants were compelled to respond further justifies the Court's finding of prejudice.  As a result of Plaintiff's actions, including sending threatening and abusive letters to the Court, the case has been brought to a virtual standstill and has not progressed with any substance toward trial despite the significant amount of time and effort expended on it by Defendants.  While Defendants' conduct in withholding Plaintiff's mail from January to mid-February 2009

28

contributed to their burden, and unnecessarily complicated these proceedings, this conduct is outweighed by Plaintiff's overall litigation abuses.

### B.     Interference with the Judicial Process

I find that Plaintiff's conduct in this case has interfered with the judicial process.  Just as Defendants are burdened by Plaintiff's abuses so, too, is the Court.  The issue here "is respect for the judicial process and the law."  *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003).  Plaintiff's unconscionable and slanderous accusations and his continued filing of meritless pleadings, despite being warned about such in this case and others, evidences a lack of respect for the Court, Defendants, and the judicial process.  In addition, Plaintiff's incredible testimony at the evidentiary hearing, the unsupported allegations about the status of his legal mail, and the submission of false pleadings also justify the Court's finding of judicial interference.  Moreover, the Court's continual review of Plaintiff's file, the issuance of Orders prompted by Plaintiff's unnecessary, noncompliant, or incredible filings increases the workload of the Court and interferes with the administration of justice.  "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document."  *See Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006) (unpublished decision).

### C.     Culpability of Plaintiff

Plaintiff has, without any reasonable excuse, invented slanderous allegations regarding the Court and Defendants and further subjected the same to unwarranted threats, abuse, and accusations.  "The vileness of [P]laintiff's comments speak for themselves."  *Id.*  He also has needlessly inundated the Court with filings and letters, even

after being warned that sanctions would result.   In regard to Plaintiff's unsupported allegations about the status of his legal mail, the Court provided Plaintiff with an opportunity to support his allegations and to submit his response to the Motion to Dismiss at the May 22, 2009 evidentiary hearing held in 07-cv-01839-WYD-KLM.   Instead, he presented irrelevant or incredible testimony and documents and failed to file his response despite several Court Orders requiring him to do so and despite being provided with a unique opportunity to avoid any contact with ADX officials whatsoever prior to filing it, by bringing it to the hearing and transmitting it under the watchful eye of the Court.   Given Plaintiff's history of filing identical pleadings in 07-cv-01839-WYD-KLM and this case, his failure to avail himself of this opportunity is equally relevant here.

Considering the record before the Court, including the docket, the hearing testimony and exhibits, and Defendants' arguments, the Court believes that Plaintiff fabricated the allegation about the current state of his legal mail in an attempt to avoid prosecuting his case after receiving a Motion to Dismiss which he could not overcome.   As a result, I must conclude that Plaintiff's conduct, which was perpetrated throughout the course of this litigation, was willful, and that he is therefore responsible for his litigation abuses.   *See id.* (noting that plaintiff's continued filing of abusive pleadings, despite warnings about the same, evidenced wilfulness).   "This factor virtually compels dismissal."   *Id.*

### D.   Advance Notice of Sanction of Dismissal

The fact that Plaintiff was warned about filing meritless, frivolous or abusive pleadings in this case and that he was warned that he risked dismissal for this conduct in several of his other pending cases makes it clear that Plaintiff knew, or reasonably should have known, that his litigation abuses would ultimately result in dismissal.   *See id.*

(justifying its decision to dismiss on the various warnings plaintiff received in his present and other cases).   The Court also notes that despite warnings given to Plaintiff, he has continued to flood the Court with unnecessary, malicious and false filings, indicating to this Court that warnings (and even dismissals of other cases on similar grounds) do little to deter Plaintiff's abusive conduct.

### E.    Efficacy of a Lesser Sanction

Finally, I conclude that no sanction less than dismissal with prejudice would be effective.  Although Plaintiff is proceeding *pro se*, his lack of legal representation does not excuse his abuses here.   *See generally Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  This Court "simply [should] not allow liberal pleading rules and *pro se* practice to be a vehicle for abusive documents.  Our *pro se* practice is a shield against the technical requirements of a past age; it is not a sword with which to insult" the participants in a federal lawsuit. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (citing *Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978)).   Unfortunately, warnings to Plaintiff have been resoundingly unsuccessful.  In addition, the Court doubts that a monetary sanction would be effective or meaningful to Plaintiff.   In summary, Plaintiff's conduct has been malicious.  He has proceeded without conscience regarding his unsupported accusations and has inundated the Court with frivolous filings in violation of prior Court Orders.[11]   Moreover, it is clear to the Court that Plaintiff is wholly unconcerned about telling the truth in pleadings and while under oath.   Under these circumstances, no lesser sanction would be effective.  Dismissal of this case with prejudice

---

[11] For example, I note Plaintiff's letter sent to Senator John McCain containing unsupported and malicious accusations directed at the Court [Docket No. 89], and his alleged sending of a similar letter to former Supreme Court Justice O'Connor.

is the appropriate result.

## V. CONCLUSION

I respectfully **RECOMMEND** that Defendants' Motion to Dismiss [#167] be **GRANTED**, and that Plaintiff's action be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 41(b) and 28 U.S.C. § 1915(e)(2)(B)(i).[12]

I FURTHER **RECOMMEND** that the Order to Show Cause [#216] be made **ABSOLUTE**.

I FURTHER **RECOMMEND** that Plaintiff's Motion for Injunction [#207] be **DENIED**. Plaintiff failed to carry his burden of proving the probability of irreparable harm. *See Schrier*, 427 F.3d at 1258. It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover, I have found that the accusations forming the basis for the Motion, namely that Defendants are currently destroying or withholding Plaintiff's mail, are

---

[12] The Court need only provide a brief basis for its recommendation to dismiss Plaintiff's action as frivolous and malicious. *See Boag v. MacDougall*, 454 U.S. 364, 365 n.1 (1982). The Court notes that the egregious conduct which justifies the Court's recommendation for dismissal with prejudice as a Rule 41(b) sanction also fully supports the Court's recommendation to categorize Plaintiff's case as frivolous and malicious. *See generally Hawkinson v. Montoya*, 283 Fed. Appx. 659, 662-67 (10th Cir. July 7, 2008) (unpublished decision) (upholding dismissal of case pursuant to both § 1915 and Rule 41(b) based on the same conduct); *Kettering v. Chaves*, No. 07-cv-01575-CMA-KLM, 2008 WL 4877005, at **1, 21 n.4 (D. Colo. Nov. 12, 2008) (unpublished decision) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) due to "Plaintiff's pattern of unacceptable and abusive behavior"); *Taylor v. Chicago Police Dep't*, No. 07-cv-5097, 2008 WL 2477694, at *4 (N.D. Ill. June 18, 2008) (unpublished decision) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) regarding the same malicious conduct).

incredible and unsupported by the record.  *See also Recommendation* [#344] at 22-23 (07-cv-01839-WYD-KLM).

With that being said, the Court does not ignore Defendants' role in prompting the filing of the Motion for Injunction.  The Court warns Defendants that, without statutory or regulatory support, there is no legal basis for them to take similar action against this Plaintiff or any other inmate.  Defendants conduct from January to mid-February 2009 caused unnecessary delay, inconvenienced the Court, and contributed to Plaintiff's fear, although unsupported, that similar wrongdoing is ongoing.  Nevertheless, Defendants' past conduct does not entitle Plaintiff to prospective relief.  *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (holding that an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future"); *Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiff[] from irreparable injury that will surely result . . . .").

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this Recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 9, 2009

                                                        BY THE COURT:

                                                        /s Kristen L. Mix
                                                      Kristen L. Mix
                                                      United States Magistrate Judge